Good morning. May it please the Court, William Robinson for the appellant, Luis Martinez. There's two related issues before the Court in this appeal. And I just want to note before I get to those that preliminarily there is no dispute as to the underlying constitutional error here, the violation of ex post facto with respect to the credit limitations applied to Mr. Martinez's sentence for crimes committed prior to the enactment of California penal code. I don't know what you mean by that. You mean that everybody agrees that the California credit limit law would affect after somebody's crime. Is that what you mean? Okay. The State Court of Appeal held that this was contrary to ex post facto. District 4 held it. Attorney General has not contested that point. Before the plea agreement, there were a number of counts, and some of those were after the time that the law went into effect, correct? That's correct. And those were ones that were dropped, but they were part of the package before it started, right? Yes. And there was at least one count that was part of the package that postdated 2933.1. The issue here has to do with, obviously, with those charges that were the crimes predated 2933.1. So really there are two issues here. The first is, was the credit limitation a part of the plea bargain? And the second is, was there a proper constitutional waiver of the ex post facto claim by the defendant, by the Petitioner in federal court? As to the first question, I think these points are pretty thoroughly brief. I just want to touch on them. As to the first point, I think I want to just stress the fact that California law makes a specific distinction between advisements about penal consequences versus what's a term of a plea bargain in cases like the Walker case, which we cite in the brief. You look at what's said at the hearing. There's really three comments that are made about the credit limitations. Comments two and three are very clearly couched as advisements. The court's comment, you will be serving 85 percent of the 26-year prison term. And the prosecutor's subsequent comment when he's asked anything else, Mr. Prosecutor, it is the people's belief there is a limitation of credits in this case. The maximum good time he can receive in this case would be a maximum of 15 percent. Look at the context of the hearing. Those are both said when all the advisements are being given about what you're giving up and what the consequences of your plea are going to be. So it really comes down to this little paragraph at the beginning where the prosecutor says, the language that's quoted in the brief, I won't read the whole thing out. And our points are two, really, as to why this is not a term of the plea bargain. Well, we're reviewing this decision of the California court of appeals. I guess that's what we or is it anyway, the California courts. Yes. For reasonableness, right? So we would have to find that it's unreasonable? I mean, is that the right standard? Right. The parties here agree that the Santabello, in effect, sets the guideline in terms of what the constitutional issue is as to part one of the plea. So we can't just say, well, if in the first instance we wouldn't have said this is part of the plea agreement. If we think they could, on these facts, come to the opposite conclusion, we have we're stuck with it, right? Right. And our point is simply that it is an unreasonable application of the Santabello principles as to the contract part of this, because if you look at the totality of what's there, at most, at most, there's an ambiguity. Because in the paragraph where it says, and this is an actual condition of the plea, it's stated in the singular. It's an interjection within the phrase, it is the people's understanding, and quite capable of reasonable interpretation, that that only refers to that he's admitting all three. The second point is clause 2. This is kind of like construing a statute, in effect. But clause 2 says that he will be required to serve at least 85 percent of his sentence, and this is the important part, because these are violent felonies, and they are 667.5. It's not because we've agreed to this. It's because they are violent felonies, and by operation of law, he will be, have his credits restricted. That was erroneous. Respondent at one point in his brief suggests the parties had to understand that ex post facto applied here. And I think in the reply brief, we've done our best to show that that's simply incorrect. There was no understanding of this. If you look at the subsequent hearing where Mr. Martinez brought a motion for credits, the position of the prosecution was ex post facto does not apply here. And they cited a California case in Ramos for their argument. It applies to the offender, not the offense. As long as you've got one crime that was committed afterwards, it applies to the whole thing. No one else has accepted that. And, in fact, in response to a question from, about counsel's effectiveness at the original plea hearing, the prosecutor said counsel wasn't ineffective because everybody understood that ex post facto didn't apply here. That's really the first point here, was it a part of the plea bargain. The second one, and I think the position here is, if anything, stronger. The State court of appeals' basis for finding procedural default in effect was constitutional waiver, not estoppel. In other words, he gave up his right to ex post facto by agreeing to the plea agreement. And I think, as we point out at considerable length and detail in the briefing, this is contrary to all of the established principles of waiver of the Federal Constitution, and also to California's principles of waiver, like Arnold and Johnson. Are you saying that he has to say, I know I have a right on these particular crimes which I'm pleading to, or counts which I'm pleading to, that I might be able to get more credits, but I'm waiving that? I don't think that would be necessary for a waiver. That would be appropriate, but not necessary. He had a whole bunch of counts, a possibility of decades longer sentences. And he agrees to this deal. So what do they have to say in order to effectively waive these rights? I think if you look at the primary Federal case that's relied upon by the district court and also by the government here is the Rose v. Palmentier case. I think that case is illustrative. What happens in Rose is you have a retroactive application of a new statute in Oregon which for the first time allows the punishment of life without parole. Mr. Rose essentially takes a deal to have this statute applied retroactively from him rather than face a penalty trial and the possibility of the death penalty. He then comes in, makes a challenge through a habeas petition in the district court and a Federal habeas petition, seeking to negate that LWOP under the Exposure Act. And this Court in Rose essentially holds that he can't do that, and the principal reasoning being he agreed to this as a part of a deal to get a better sentence and was aware that the law was going to be applied retroactively to him. That's really the key distinction here. There is no suggestion anywhere in the record here that Mr. Martinez was aware that by, if he agreed to the credit limits or by the statement about the credit limits, that he was somehow giving up something to which he was entitled, number one, and number two, that any law was going to be applied retroactively to him. I don't think it's required, as you said, Justice Sotomayor. You don't have to lay out. You understand you have the right under the Exposed Facto Clause. That would obviously be preferable. Well, how about, it seems to me you're saying, they have to say, well, look, you have a right to more credits on these counts, but you're giving up, but you're not going to serve the full number of years for those counts. I mean, what do you have to say? Here's the deal. I don't know exactly what words you want to use in this situation that would have better informed him or that you think is required to have informed him that he's giving up something. According to the California courts, he obviously had one big deal which was favored to him, and he was happy with it. It's not disputed. This was a favorable plea bargain for the defendant. The defendant is not seeking to undo this plea bargain. What this is, from our point of view at least, is legal. He is seeking to undo it because he wants to get these credits, which were part of the deal, if you accept that part of it. It's part of the deal. He wants to get these credits, which means he wants to undo it. I think that's what the other side would say. We have to undo this deal and go back. I think our primary argument, or at least our leading argument, is that it's not part of the deal. At best, there's an ambiguity, and the ambiguity has to be construed in favor of the party, the criminal defendant or the party who created it. So you want us to say it's unreasonable to say this was part of the deal, so he gets the better credits on these counts, even though it was stated during the hearing that he was only going to get 85 percent credit? Correct. If he's having your cake and eating it's two. Let's imagine for a second that the ---- Isn't it having your cake and eating it's two? Well, that would be one way of looking at it. But I think my point is this. If you took out the paragraph that we've all been picking apart like it was a statute and you only had advisements about credit restrictions, not any suggestion that this is part of the deal, but simply we're giving you legal advisements. And mind you, California courts suggest that even though advisements about credits are not required, they are the better practice. If you only have that, what would the situation be here? And he comes back in and says this violates Ex Post Factor, or even at the sentencing hearing says the credit restrictions are erroneous because these crimes predate. What you have here, and our contention is what this case was about all along as the Superior Court found in the first place, was simply legal error in sentencing. You had an unauthorized sentence because a credit restriction is being applied. That couldn't apply. It's as if it was for the wrong offense. It didn't apply to that offense. It didn't apply to these counts because of when they were committed. If you look at the contested passage there, because it refers to the reason for the It's because this is a violent felony. It's a statutory matter. You're subject to these by law. It's an error. It's an error. It's over your time. Okay. I'll give you a minute for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. Amy Haddox appearing for Respondent. As to the first issue, what were the terms of the plea bargain, this Court has already pointed out correctly that this issue is viewed under the rubric of the AEDPA. So this Court's question is whether the State court's decision to find that this was a term of the plea bargain was consistent with the proper application of State contract law in interpreting the plea bargain. Let me ask you this. If we were to say it was ambiguous what happens there, can it be reasonable that this was part of the plea bargain? Yes, it can. There's essentially three prongs to the contract analysis. First, you look at the plain language of the statute or the plain language of the agreement to try to determine what the party's intent was. If there's some ambiguity, this Court then looks to the reasonable expectation of the promisee, considering all the circumstances. And if that ambiguity continues to be unresolved, then the Court tends to defer to the expectations of the defendant or refer that ambiguity in the defendant's favor. However, I submit that, number one, there was no ambiguity here and the Court was reasonable in concluding there was no ambiguity. But secondly, even if there was an ambiguity, it was not reasonable. A reasonable petitioner would not have construed that ambiguity in his favor. So let's take a look at that for a second. Wait, wait. A reasonable petitioner would not have you mean a reasonable defendant? I don't know what you mean. A reasonable defendant. Let me just read the standard from the way it's described in the California case law, and perhaps that will put the question in better focus. It says, if contractual language is clear and explicit, it governs. On the other hand, if the terms of the promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed at the time of making it that the promisee understood it. The mutual intentions to which the courts give effect is determined by the objective manifestation of the party's intent, including the words used in the agreement as well as the extrinsic evidence of such objective matters. And what this Court has said in Buckley, and this is consistent with California law, I believe, is that we generally look to the reasonable expectation of the promisee. And so the expectation of the promisee has to be reasonable. And if it is reasonable and there's still an ambiguity there, then we construe it in favor of the defendant. Do you have the transcript handily? Yes, I do. Right there. Could you turn to it for a minute? Sure. I just want to follow up on Judge Rastani. Yes, go ahead. I'll get to it. So it begins with the DA appearing in the court when he begins this scenario. And he says, Mr. Chadwick is the DA. That's correct. And he says, Mr. Martinez will be changing his plea to count one, admitting the allegations under 1203.066. He will be changing his plea to count five. He will be changing his plea to count one and six and admitting the allegation under 1203.066. He will be changing his plea to count one and he will not be admitting the allegation under section 67.1C. Under County 11, the negotiated disposition is 28 years in the state prison, no more, no less. And then he says, and it is the people's understanding, he doesn't say, and the further we have agreed that he will be admitting counts as to all three victims, that he will be required to serve at least 85%. And it changes. Well, what he's doing is he says, it's the people's understanding. I understand that you're focusing on those terms. Let me see if I can tell you. The whole text. I mean, this is the DA standing up in court saying, this is our agreement. And then based on that agreement, one could say, it's my understanding. So why isn't this all ambiguous? It's not ambiguous in the sense that what he says is, first he lays out the counts. And he does that. And I think there are some typographical errors in the way he lays out the counts. But that's irrelevant to this question. And then he basically summarizes. He says, this is the people's understanding of the bargain. And then he says, and this is an actual condition of the plea. So he makes it clear he's still talking about the terms of the plea bargain. He uses the term condition in the singular. But I think that's just bad grammar. It seems to me he's getting ready to lay out the people's further understanding of what this plea bargain entails. And then he lists three things. The first thing he lists is that this defendant will be admitting counts as to all three victims, John Doe 1, 2, and 3. That he will be required to serve at least 85% of his sentence because these are violent felonies and that they are 667.5. And that he will receive his prison sentence of 26 years top-bottom. So clearly the third component of that is part of the plea. The first component of that is part of the plea. I think the court was reasonable to conclude that all three of those components were parts of the plea as the people understood it. The court then gave the defendant and his counsel a chance to clarify or object. Is this not your understanding of the plea? And they both affirmed that it was. So to the extent that there was any ambiguity at all, the fact that neither the defense counsel or the defendant objected or said, wait a minute, Your Honor, we don't understand term number two to be a condition of the plea. We understand that to be by operation of law. None of those types of objections were made. So at a ---- Actually, the court's inquiry at the end, after the DA went through, they had a little bit of some ambiguity about  Right. And after he goes through that, the judge says to the counsel, to Mr. Martinez's counsel, did Mr. Chadwick adequately represent our understanding of the issues here? And Ms. Madden says, yes, he did. So I guess, I mean, you know, one could say that that suggests that all this was part of the plea agreement. Yes. I think that gets back to Judge Rosani's point, which is, is it unreasonable? This is what this court now has to determine. Was it unreasonable for the Court of Appeal, looking at that record, to conclude that this was part of the bargain? And the answer is no. And I think that's also analyzed in terms of saying, well, what were the parties giving up here? Because the defendant was agreeing to plead to four accounts. Ten others were dismissed. And of those ten that were dismissed, seven of those were clearly subject to the credit limitation under 2933.1. So here the prosecutor had dismissed several counts, could have reached the exact same sentence, with counts that were clearly subject to, had anybody raised an issue here? But the prosecutor said he's going to serve 85 percent of his term, and nobody objected to that. Everybody agreed that that's exactly what the parties were bargaining for here. And in exchange, he got out from under a maximum exposure of 84 years and four months to life, if you add the determinate and indeterminate terms together. And he got seven counts dismissed that would have been subject to that limitation of 15 percent on custody credit earnings. One thing that bothered me with regard to the transcript, and I'm looking at ER 22, the court had just gone through what some of the limitations that the prisoner would have. Then Mr. Chadwick, the DA, says, I don't know if it is this court's practice to advise regarding credits. It is the people's belief that there is a limitation on credits in this case. Now, he didn't say that that's what is required by the play agreement. He says it is the people's belief, the limitation on credits, that there is a limitation on credits in this case. The maximum good time that he can receive in this case would be a maximum of 15 percent. Now, that doesn't sound like he's relying on the play agreement. It sounds like he's relying on the law. Well, what the defendant has pointed out in this case is that there may have been some ambiguity in the law as to whether those credit limits would apply or not. There was a case called People v. Ramos that some DAs were relying on to say that there is no ex post facto violation. It seems to me that the court could reasonably construe, the state appellate court could reasonably construe that advisement as saying, we understand this is what the law is to be, and we don't understand that defendant plans to challenge that. A defendant is agreeing as part of his plea bargain that he will be subject to these limitations. That was set forth clearly below. So the fact that the defense, the DA that requested the court to, again, advise more in the colloquy of what would normally be done under 2933.1, I don't think that undermines the original agreement. Essentially, what the parties are saying is that all parties agree that he's going to be subject to the limitations set forth in 2933.1, notwithstanding any statutory or constitutional challenges, that that condition will stand. And absent some kind of an objection by the defendant saying, wait a minute, I'm not agreeing to that, which is what was set forth in the beginning of the plea colloquy, I don't think it creates an ambiguity. Or at least the court of appeal was reasonable to conclude that it did not. Let me ask you a question. The plea colloquy under Rule 11, it goes through all the constitutional rights he's giving up to trial, appealing this, et cetera, et cetera. But it doesn't say anything about ex post facto laws. That's correct. And that's the second issue that's presented here. I don't think that poses a problem to the court at all. And let me explain briefly why I realize I'm out of time. Go ahead. The U.S. Supreme Court case law sets forth certain rights that definitely must be enumerated on the record. Under Boykin, we know that the defendant has to be advised of his right against self-incrimination, his right to trial by jury, and his right to cross-examination. We also know under cases like Johnson v. Zerps that the defendant must be advised of a Sixth Amendment right to counsel, and he must make that waiver on the record. There is also language that a defendant must make a plea and make related waivers knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences. That quote comes from Brady v. United States. I would submit to the court that other than the Boykin rights that were specifically enumerated in that case, and other than the Sixth Amendment right to counsel, there aren't controlling U.S. Supreme Court authorities that would require other rights that necessarily go along with pleading guilty or agreeing to a particular disposition to be specifically enumerated on the record. What the defendant has to do is he has to have advice of counsel, competent advice in terms of whether this plea bargain is a good idea for him. So, for example, a defendant may be waiving the right to present a valid defense. He may have a defense that involves, say, for example, entrapment or something. Normally, that would be part of his right to present a defense that's guaranteed by the Constitution. We don't have to say to him when he's taking his plea, and you understand you may have viable defenses that you are giving up. Aside from those waivers that are required to be enumerated under Boykin and under Johnson v. Zerbst, none of those other constitutional rights that would go along with giving up your right to jury trial and agreeing to a particular negotiated disposition must be enumerated. Now, this court held that in Rose v. Palmatier. The defense counsel has attempted to distinguish that case, but I think it's really directly on point here. And what this court said in Rose is, quote, the fact that Rose might not have understood that acceptance of the true life sentence would preclude an ex post facto objection to that sentence does not render Rose's choice unknowing or involuntary under all the circumstances. And further, we have never held that an ex post facto claim cannot be waived unless the defendant specifically understands that he is waiving that particular right, and we will not do so now. So it seems that this court has directly spoke to the question that's presented here, which is whether you have to say to a defendant, you understand that this particular sentence, which is very advantageous to you, could not otherwise be legally imposed under the United States Constitution unless you agree to waive your ex post facto rights. Essentially, that's what defendant is saying, that type of discussion would have to take place here, and there's no U.S. Supreme Court authority to support that, nor does this court's case precedent support that. Thank you for that very complete answer. Thank you, Your Honor. So fast. One minute. I just wanted to respond to Judge Rustani's question about if you conclude that there's an ambiguity here. I think the citation by counsel was correct. You look at the expectations of the party to try to resolve the ambiguity here. And I think the expectations of Mr. Martinez here, as stated, each time the credit limitations are brought up, is that these are going to apply because it's a matter of law. One, two, three. Each of the three times, including the time during the laying out of what the terms of the plea are. And I think this ties in with Judge Hugg's question about the final comment by the prosecutor. I don't know if it's the court's practice to advise about credits, but it's our belief that the credit limitations apply. If you look at this in a contract dispute type case as extrinsic evidence of what was in the state of mind of the parties, what does that suggest? It suggests that this applies by application of law, not because it's a term of the plea bargain. I think that's an almost inescapable conclusion. That is the last word on the point. The notion raised by counsel that somehow there should have been an objection when the prosecutor made that statement, that's not what California law requires. If it's an unauthorized sentence, it could have been raised at the sentencing hearing, it could have been raised, as was done here, in a post-judgment motion to correct the unauthorized sentence. No one has disputed that that was a lawful procedure here. That's the second point on which this case is distinguishable from Martinez. There was a procedural default in Martinez in perfecting the appeal, and this court, in its opinion, doesn't distinguish between one or the other ground. Final point on the question of the holding in Rose is not at issue here. I'm not arguing, Judge Rustani, that there has to be an advisement about ex post facto rights. There's simply no basis for that. But in order to effect a waiver of a constitutional right, the defendant has to understand that he's giving up something. And there's simply no indication that by agreeing to the plea bargain, this gentleman understood or could have possibly understood that he was giving up credits. He was giving up his trial rights. He was giving up the ability to contest these charges. He was giving up lots of things in doing this. But it's clear from these proceedings that he was the credits were based on the application of law, and it was simply an erroneous statement. Actually, when Judge Payas, when you read the plea colloquy, I noted that Mr. Chadwick originally said the negotiated disposition is 28 years in the State prison, no more or no less. He says that originally. It's actually 26 years. That's a mistake. The judge later corrected that. Right. That's a mistake. The same way that the application of credits, which isn't a term of the plea bargain, was a mistake that could have been corrected. Well, even you think it was only a mistake as to some of the counts, not all of the counts. And that's not at issue. The original order of the superior court affected only those counts, the pre-sentence credits, and then only those counts. Right. Thank you. Thank you very much. Thank you.
judges: Restani, Hug, Paez